**TOURUS RECORDS, INC., Petitioner,**

v.

**DRUG ENFORCEMENT ADMINISTRATION, Respondent.**

No. 00–1132.

United States Court of Appeals, District of Columbia Circuit.

Argued March 5, 2001.

Decided Aug. 17, 2001.

Pleasant S. Brodnax, III argued the cause and filed the brief for petitioner.

Laurel Loomis, Attorney, U.S. Department of Justice, argued the cause for respondent. With her on the brief was Wilma A. Lewis, U.S. Attorney at the time the brief was filed.

Before: RANDOLPH, ROGERS, and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge GARLAND.

GARLAND, Circuit Judge:

Petitioner Tourus Records, Inc. seeks review of the Drug Enforcement Administration's (DEA's) denial of its application to proceed in forma pauperis in a forfeiture proceeding. We find the DEA's decision to be reasonable and supported by

substantial evidence, and we therefore affirm its denial of Tourus' application.

## I

In October 1999, an officer of the Richmond Hill, Georgia police department stopped a van occupied by three men. The men told the officer that they were traveling to local colleges, selling music recorded on compact discs. After searching the van, the officer confiscated more than $50,000 in cash, as well as a quantity of compact discs.

Beyond these core facts, the parties dispute the circumstances of the search and seizure. According to the officer's report, he stopped the van because it had swerved onto the highway's shoulder several times, and he searched the van because his dog alerted to the rear of the vehicle. The officer reported that he discovered burnt marijuana residue and stems in the van's rear ashtray, a bag containing $50,860 in cash bundled in increments of $1000, and 50 compact discs.

According to Tourus, the officer stopped the van without cause, found no contraband, and seized $50,860 in cash plus additional money taken from the pockets of the occupants that was not reported to the DEA. Tourus also states that the officer seized 700, rather than 50, discs. It asserts that the three men were distributing compact discs for the company, and that the $50,860 in cash were the proceeds of disc sales.

The Richmond Hill police transferred the $50,860 to the DEA, which in December 1999 initiated administrative forfeiture proceedings pursuant to 21 U.S.C. § 881(d).[1] On January 20, 2000, in order to have the opportunity to contest the forfeiture in court, Tourus filed a claim of ownership. It also completed an affidavit of indigency to support its request that the DEA waive the $5000 cost bond ordinarily required to contest a forfeiture, and permit the company to proceed in forma pauperis.[2] The affidavit filed by Tourus showed that the company had no monthly income, no assets, no liabilities, and no expenses. In support of the waiver application, the president of Tourus, Paul Dowe, Jr., also filed an affidavit setting forth his personal finances. The affidavit stated that Dowe and his spouse had a combined monthly income of $4855, savings of $950, a computer worth $5000, recording gear valued at $3000, a home valued at $157,000, and two motor vehicles valued at $13,000 and $17,400 respectively. The Dowe affidavit further stated that the couple had two dependent children and monthly expenses totaling $3670.

On March 7, 2000, the DEA sent Dowe a letter, informing him that it had denied the application to waive the bond and proceed in forma pauperis. The letter stated, in relevant part:

> Your claim for the above-referenced seized property is being returned to you because the deciding authority found that the Affidavit of Indigency you submitted in lieu of a cost bond is not adequately supported. As a result, your petition to proceed *In Forma Pauperis* is denied.

---

**1.** Section 881(a)(6) of Title 21 provides that proceeds of drug offenses are subject to forfeiture to the United States. Section 881(d) makes the provisions of the customs laws regarding administrative forfeiture applicable to forfeitures under § 881.

**2.** Congress abolished the bond requirement for forfeiture proceedings commenced after August 23, 2000. *See* Civil Asset Forfeiture Reform Act of 2000, Pub.L. No. 106–185, §§ 2(a), 21, 114 Stat. 202, 204, 225 (2000) (section 2(a) codified at 18 U.S.C. § 983(a)(2)(E)). This opinion describes the law as applicable to the forfeiture proceedings in Tourus' case, which commenced in December 1999.

Resp't App. at 18. On March 23, 2000, Tourus filed a petition in this court, seeking review of the DEA's denial of its application to proceed in forma pauperis.

## II

■ Both Tourus and the government agree that we have jurisdiction to consider Tourus' petition pursuant to 21 U.S.C. § 877. We agree as well. Section 877 grants this court jurisdiction to review "[a]ll final determinations, findings, and conclusions of the Attorney General under this subchapter." Because the provision under which the DEA initiated administrative forfeiture proceedings, 21 U.S.C. § 881(d), is part of the same subchapter of the United States Code as § 877,[3] we have jurisdiction to review final determinations of the Attorney General under that provision. See Yskamp v. DEA, 163 F.3d 767, 770 (3d Cir.1998) (holding that § 877 provides courts of appeals with jurisdiction to review DEA forfeiture proceedings); Scarabin v. DEA, 925 F.2d 100, 100–01 (5th Cir.1991) (same). And by delegation from the Attorney General, the DEA's decision to deny Tourus' in forma pauperis application became such a final determination, following its approval by the Justice Department's Asset Forfeiture and Money Laundering Section.[4] Cf. Roberts v. United States Dist. Court, 339 U.S. 844, 845, 70 S.Ct. 954, 94 L.Ed. 1326 (1950) (holding

that "denial by a District Judge of a motion to proceed in forma pauperis is an appealable order"); Arango v. United States Dep't of the Treasury, 115 F.3d 922 (11th Cir.1997) (reviewing a Customs Service denial of an in forma pauperis petition pursuant to 28 U.S.C. § 1331).

■ Although the parties agree about our jurisdiction, they disagree about the applicable standard of review. Tourus contends that we should review the denial of its petition under the familiar standard of the Administrative Procedure Act (APA), and overturn the DEA's decision if we find it to be arbitrary or capricious. See 5 U.S.C. § 706(2)(A). The government contends that our review is "strictly limited to consideration of whether the appropriate procedural safeguards were made available to Petitioner," Gov't Br. at 5, and that we lack authority to review the merits of the DEA's decision, even under the APA's deferential standard.

Tourus' view is the correct one. The cases the government cites as supporting extraordinarily limited review do not involve denials of in forma pauperis status. Rather, those cases involve review of a quite different kind of denial: the denial of a request for the mitigation or remission of an administrative forfeiture. See Yskamp, 163 F.3d at 770; Scarabin v. DEA, 919 F.2d 337, 339 (5th Cir.1990), reh'g denied,

---

3. Both are in subchapter I ("Control and Enforcement") of Chapter 13 ("Drug Abuse Prevention and Control") of Title 21 ("Food and Drugs") of the United States Code.

4. Except where delegated to another Department of Justice official, the Attorney General has delegated to the DEA certain "functions vested in the Attorney General" by the Comprehensive Drug Abuse Prevention and Control Act of 1970 (as amended), which includes §§ 877 and 881. 28 C.F.R. § 0.100(b) (2000). The Attorney General has also delegated supervision of civil and criminal forfeiture actions to the Criminal Division of the Justice

Department. See 28 C.F.R. § 0.55(c), (d) (2000). And the Department's U.S. Attorneys' Manual provides that "[i]n cases where the seizing agency believes there are clear and articulable reasons for denial" of an in forma pauperis petition, "the request for waiver shall be referred ... for final determination" to the Asset Forfeiture and Money Laundering Section of the Criminal Division. U.S. DEPARTMENT OF JUSTICE, UNITED STATES ATTORNEYS' MANUAL,§§ 9–112.220, 9–119.112. As discussed infra Part IV, the Asset Forfeiture and Money Laundering Section made the final determination with respect to Tourus' application.

925 F.2d 100 (5th Cir.1991); *In re $67,470.00*, 901 F.2d 1540, 1543 (11th Cir. 1990); *see also Arango*, 115 F.3d at 925; *United States v. One 1987 Jeep Wrangler*, 972 F.2d 472, 480 (2d Cir.1992). To clarify the distinction, we briefly review the procedural landscape.

Section 881 makes the provisions of the United States Code that govern forfeitures for violations of the customs laws applicable to forfeitures for violations of the drug laws. 21 U.S.C. § 881(d); *see Small v. United States*, 136 F.3d 1334, 1335 (D.C.Cir.1998). Under those provisions and the applicable regulations, the DEA is authorized to subject seized property to administrative forfeiture by sending written notice of its intent to forfeit to each party who appears to have an interest in the property, and by publishing such notice in a newspaper of general circulation once a week for three successive weeks.[5] If, within twenty days after the first publication, a claimant submits a claim of ownership and posts a cost bond of the lower of $5000 or 10% of the value of the property, or successfully petitions to waive the bond and proceed in forma pauperis, the administrative proceedings are terminated and the government must proceed by filing a claim for judicial forfeiture in a federal district court.[6]

If a claimant fails to submit a claim and post bond (or successfully obtain a waiver), however, the property is administratively forfeited by default.[7] Once property has been administratively forfeited, the only option available to one with an interest in the property is to file a petition for remission or mitigation with the seizing agency.[8] Treating an agency's decision to grant such a petition as an "act of grace," the cases cited by the government hold that the courts may not review the merits of an agency's decision to deny mitigation or remission, but may only determine whether the agency followed the applicable procedural requirements prior to forfeiting the property. *In re $67,470.00*, 901 F.2d at 1543; *Scarabin*, 919 F.2d at 338–39; *see Yskamp v. DEA*, 163 F.3d at 770; *Arango*, 115 F.3d at 925; *One 1987 Jeep Wrangler*, 972 F.2d at 480; *see also Ibarra v. United States*, 120 F.3d 472, 475 (4th Cir.1997). In so holding, these cases appear to treat the decision to mitigate or remit as an "agency action ... committed to agency discretion by law," a category of administrative decisions to which the judicial review provisions of the APA are inapplicable. 5 U.S.C. § 701(a)(2); *see* 28 C.F.R. § 9.7(a)(1) (2000) ("Whether the property or a monetary equivalent will be remitted to an owner shall be determined at the discretion of the Ruling Official.").

But whatever the appropriate standard may be for reviewing denials of petitions to mitigate or remit, the denial of an application for in forma pauperis status is a fundamentally different kind of decision— one that plainly is not committed to the DEA's unreviewable discretion. The applicable regulation states: "Upon satisfactory proof of financial inability to post the bond, [the deciding official] *shall* waive the bond requirement for any person who

---

5. *See* 19 U.S.C. § 1607; 21 C.F.R. § 1316.75 (2000).

6. *See* 19 U.S.C. § 1608; 19 C.F.R. § 162.47 (2000); 21 C.F.R. §§ 1316.76(b), 1316.78 (2000); *see also Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir.1997); *Boero v. DEA*, 111 F.3d 301, 304 (2d Cir.1997). *But see supra* note 2 (noting that Congress abolished

the bond requirement for forfeitures commenced after August 23, 2000).

7. *See* 19 U.S.C. § 1609; 19 C.F.R. § 162.46 (2000); 21 C.F.R. § 1316.77 (2000); *Small*, 136 F.3d at 1335; *Boero*, 111 F.3d at 304.

8. *See* 19 U.S.C. § 1618; 21 C.F.R. § 1316.79 (2000); 28 C.F.R. §§ 9.1–9.9 (2000); *Ibarra*, 120 F.3d at 475.

claims an interest in the seized property." 19 C.F.R. § 162.47(e) (2000) (emphasis added).[9] Nothing suggests that the question of "satisfactory proof" under this regulation was intended to be determined at the caprice of the agency. *See Arango*, 115 F.3d at 929 ("The indigency exception . . . is an important means of affording equal access to [judicial forfeiture] hearings and the right to proceed as an indigent must not be arbitrarily denied."); *United States v. Evans*, 92 F.3d 540, 542 (7th Cir.1996) ("The waiver of the bond is mandatory if the claimant is in fact a pauper."). To the contrary, the regulation was adopted in response to the Ninth Circuit's holding in *Wiren v. Eide* that "application of the bond requirement . . . [is] unconstitutional with respect to indigent persons on due process and equal protection grounds," because it has the effect of "depriving an individual whose property has been seized of an opportunity for a hearing solely because of inability to post a bond." 45 Fed.Reg. 84,993, 84,993 (Dec. 24, 1980) (citing *Wiren v. Eide*, 542 F.2d 757 (9th Cir.1976)). The concerns expressed in *Wiren* would hardly be ameliorated if, although the government permitted the filing of a waiver application, it retained unreviewable authority to determine whether proof of indigency has been satisfactorily made. As Judge Posner put it in *Evans*, "it would be anomalous if the government could pauperize you by seizing all your property and then prevent you from challenging the seizure by denying you pauper status, thus requiring you to post a bond with money that you don't have." *Evans*, 92 F.3d at 542–43.

■ The DEA's proposed standard of review is also inconsistent with the statute the agency concedes grants us jurisdiction to review this case, 21 U.S.C. § 877. Under that statute, "[f]indings of fact by the Attorney General" are conclusive upon the court, but only "if supported by substantial evidence." That provision necessarily requires the reviewing court to determine whether the agency's findings have factual support, and hence eliminates any claim to nonreviewability. And while § 877 does not specify a standard for reviewing the Attorney General's reasoning as distinguished from his factfinding, the APA provides the appropriate default standard: A court must set aside agency action it finds to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A).[10] At a minimum, that standard requires the agency to "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962)). We now proceed to determine whether the agency has done so here.

9. Neither the governing statutes nor the DEA forfeiture regulations provide for proceeding in forma pauperis in lieu of posting a bond. Section 881(d) of Title 21, however, makes relevant U.S. Customs Service regulations, like 19 C.F.R. § 162.47(e), applicable to DEA forfeiture proceedings. *See Clymore v. United States*, 164 F.3d 569, 572 n. 3 (10th Cir.1999); *Small*, 136 F.3d at 1335; *see also Jones v. DEA*, 801 F.Supp. 15, 23 (M.D.Tenn.1992); Resp't App. at 2 (DEA notice form advising petitioner of the availability of waiver on grounds of indigency).

10. *See Al–Fayed v. CIA*, 254 F.3d 300, 304 (D.C.Cir.2001) (noting that the APA provides the standard of review where none is mentioned by the statute); *Arango*, 115 F.3d at 925, 928 (holding that the APA's arbitrary or capricious standard applies to the denial of in forma pauperis status in forfeiture proceedings); *Evans*, 92 F.3d at 542 (same).

## III

 Tourus contends that the DEA's denial of its application for in forma pauperis treatment, as embodied in the agency's March 7, 2000 letter, was arbitrary and capricious, and that the DEA's decision must therefore be vacated. Were that letter the only record evidence of the agency's decisionmaking process, we would agree. A "fundamental" requirement of administrative law is that an agency "set forth its reasons" for decision; an agency's failure to do so constitutes arbitrary and capricious agency action. *Roelofs v. Secretary of the Air Force,* 628 F.2d 594, 599 (D.C.Cir.1980); *see State Farm,* 463 U.S. at 43, 103 S.Ct. 2856. That fundamental requirement is codified in section 6(d) of the APA, 5 U.S.C. § 555(e). Section 6(d) mandates that whenever an agency denies "a written application, petition, or other request of an interested person made in connection with any agency proceeding," the agency must provide "a brief statement of the grounds for denial," unless the denial is "self-explanatory." This requirement not only ensures the agency's careful consideration of such requests, but also gives parties the opportunity to apprise the agency of any errors it may have made and, if the agency persists in its decision, facilitates judicial review.[11] Although nothing more than a "brief statement" is necessary, the core requirement is that the agency explain "why it chose to do what it did." Henry J. Friendly, Chenery Revisited: Reflections on Reversal and Remand of Administrative Orders, 1969 DUKE L.J. 199, 222.

 The DEA's letter denying Tourus' petition to proceed in forma pauperis does not meet the APA standard. The letter says nothing other than that the "Affidavit of Indigency you submitted in lieu of a cost bond is not adequately supported." Resp't App. at 18. That is not a statement of reasoning, but of conclusion. It does not "articulate a satisfactory explanation" for the agency's action, *State Farm,* 463 U.S. at 43, 103 S.Ct. 2856, because it does not explain "why" the DEA regarded Tourus' affidavit as unsupported, Friendly, *supra,* at 222.[12] Nor are the grounds for denying Tourus' application for indigent status "self-explanatory," 5 U.S.C. § 555(e), since the company's affidavit is in the form required by the DEA and lists zero assets and zero income. The letter thus provides no basis upon which we could conclude that it was the product of reasoned decisionmaking.

 Ordinarily, the discovery of this kind of error would end appellate consideration. When an agency provides a statement of reasons insufficient to permit a court to discern its rationale, or states no reasons at all, the usual remedy is a "remand to the agency for additional investigation or explanation." *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 744, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985).

---

11. *See Camp v. Pitts,* 411 U.S. 138, 142–43, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973); *Burlington Truck Lines,* 371 U.S. at 167–69, 83 S.Ct. 239; *Roelofs,* 628 F.2d at 599–600; *Tabor v. Joint Bd. for the Enrollment of Actuaries,* 566 F.2d 705, 711 (D.C.Cir.1977).

12. *See Jones,* 801 F.Supp. at 24–25 (reaching the same conclusion with respect to the same form denial of waiver by the DEA); *cf. Philadelphia Gas Works v. Federal Energy Regulatory Comm'n,* 989 F.2d 1246, 1251 (D.C.Cir. 1993) (holding that FERC's approval of a pipeline charge, on the ground of "unique facts and circumstances" and "equity," "leaves regulated parties and a reviewing court completely in the dark as to the core of FERC's reasoning"); *Washington v. Office of the Comptroller of the Currency,* 856 F.2d 1507, 1513 (11th Cir.1988) (holding that an agency denial of a hearing on the ground that "the substantial expense and inconvenience ... is not warranted" was not " 'a brief statement of the grounds for denial' as required under Section 555(e)").

In this case, however, the DEA's March 2000 letter does not stand as the sole "explanation" of the agency's decisionmaking rationale. On appeal, the DEA submitted internal agency memoranda, dated February 2000, that specify the grounds upon which the DEA denied Tourus' petition. Although it is true that "courts may not accept appellate counsel's *post hoc* rationalizations for agency action," *Burlington Truck Lines,* 371 U.S. at 168, 83 S.Ct. 239, the memoranda submitted by the DEA are not post hoc rationalizations of counsel. Rather, they represent the "contemporaneous explanation of the agency decision," and are therefore appropriate subjects for our consideration. *Camp v. Pitts,* 411 U.S. 138, 143, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973); *see also Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 420, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) (directing lower court to examine the record that was before the agency at the time of decision, in order to determine whether it "disclose[d] the factors that were considered"). We now turn to an examination of these memoranda.

## IV

■ The first memorandum submitted by the government, dated February 2, 2000, is from the DEA to the Justice Department's Asset Forfeiture and Money Laundering Section, and explains the DEA's decision to deny Tourus' application to proceed in forma pauperis. Resp't App. at 16. The memorandum states that "it appears that Tourus Records, Inc. is a mere shell corporation," because the corporation's affidavit discloses that it has "no assets, no expenses, no liabilities, and no income." The "true claimant," the memorandum continues, "appears to be its President, Paul Dowe, Jr., who appears to have sufficient assets to post the required bond of $5,000." The memorandum notes that "[i]n his affidavit, Mr. Dowe states that he and his spouse have an average income of $4,855.00 per month and have $950.00 in a savings account," and that Dowe also has "two (2) vehicles worth a total of $30,400.00, a computer worth $5,000.00, and recording gear worth $3,000.00." *Id.*

The second memorandum is the Justice Department's February 28, 2000 reply, concurring in the DEA's view. Resp't App. at 17. That memorandum states the Department's agreement that Dowe is the true claimant. In assessing Dowe's ability to post the bond, the memorandum reviews the data cited by the DEA, and further notes that the Dowes own real property valued at $157,000, that they have two dependents, and that their combined monthly expenses total $3670. The memorandum then compares the Dowes' overall financial situation with the "year 2000 Department of Health and Human Services Poverty Guidelines[, which] set the poverty threshold for a family of four at $1,421 per month," and concludes that the "petitioner ... has sufficient assets with which to post the required $5,000 bond without adversely affecting his ability to provide the necessities of life for himself and his dependents." *Id.*

Unlike the DEA's March 2000 letter, the two February memoranda adequately explain the government's rationale for regarding Tourus Records as unqualified for in forma pauperis treatment. That rationale is neither arbitrary nor capricious. The government found that Tourus is not itself the true claimant, and that the true claimant—Mr. Dowe—is not indigent. Rather, the agency found that Dowe has the financial wherewithal to post the required bond, and hence that waiver of the bond requirement is not justified. *Cf. Unification Church v. INS,* 762 F.2d 1077, 1081–82 (D.C.Cir.1985) (denying attorney's fees to otherwise eligible applicants be-

cause the real party in interest was ineligible for fees).

We also conclude that there is substantial evidence to support the factual findings upon which the DEA's reasoning is based. First, although Tourus represents itself as a company that produces and markets music recorded on compact discs, its financial affidavit states that Tourus has no income, no expenses, and no assets of any kind. The personal affidavit of Tourus' president, by contrast, states that Dowe does have income, expenses, and assets, including the recording gear that one might ordinarily expect a recording company to have. While this might not require the conclusion the DEA reached, it does adequately support the agency's determination that Tourus Records is merely a shell corporation, and that Dowe is the real party in interest whose financial capacity should be evaluated in deciding whether to waive the bond requirement.

Second, the evidence supports the DEA's conclusion that Dowe himself does not qualify for in forma pauperis status. That evidence includes family income of almost $60,000 per year, well in excess of the family's annual expenses, plus assets of approximately $200,000. This financial information provides substantial evidence to support the DEA's finding that Dowe is

able to post the required $5000 bond—particularly in light of the fact that the DEA permits a claimant to post bond with either cash or sureties. *See* 21 C.F.R. § 1316.76(a) (2000); Resp't App. at 2 (DEA notice form).[13]

## V

Although the notice by which the DEA denied Tourus' application to proceed in forma pauperis was insufficient to satisfy the requirements of the APA, the internal memoranda upon which it was based are sufficient. Those memoranda make clear that the DEA's rationale for denying the application is reasonable, and that its findings are based on substantial evidence. Indeed, a remand to correct the initial notice would serve no purpose, as the agency could and no doubt would simply retransmit its internal memoranda to petitioner. *See Envirocare of Utah, Inc. v. Nuclear Regulatory Comm'n,* 194 F.3d 72, 79 (D.C.Cir.1999) (noting that "reversal and remand is 'necessary only when the reviewing court concludes that there is a significant chance that but for the error the agency might have reached a different result'" (quoting Friendly, *supra,* at 211)). Accordingly, the DEA's denial of Tourus

---

**13.** Tourus failed to file a reply brief in this case. At oral argument, petitioner noted that it is a Virginia corporation, and contended that Virginia law does not permit "piercing the corporate veil" in a case like this. He also contended that, because the DEA's form affidavit (which is itself a copy of the in forma pauperis affidavit set forth in Form 4 of the Federal Rules of Appellate Procedure) asks the applicant to list asset "value" rather than "net value," Dowe's net worth was overstated by an unstated amount of mortgage and other debt. Petitioner has waived these contentions by waiting until oral argument to raise them. *See Galvan v. Federal Prison Indus., Inc.,* 199 F.3d 461, 468 (D.C.Cir.1999). But even if the arguments were not waived, neither would affect our conclusion. The validity of the DEA's determination to treat Tourus as a shell for purposes of its own bonding requirements is a question of federal, not Virginia, law, and rests on whether that determination satisfies the requirements of the APA. *Cf. Chicago Sch. of Automatic Transmissions, Inc. v. Accreditation Alliance of Career Schs. & Colleges,* 44 F.3d 447, 449–450 (7th Cir.1994). And even if Dowe's net worth were lower than that which appears on the face of his affidavit, it would not affect our conclusion that there is substantial evidence to justify the determination that he is capable of securing a $5000 bond, particularly given the opportunity to utilize a surety.

Records' application to proceed in forma pauperis is

*Affirmed.*