# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued January 12, 2016         Decided April 15, 2016

No. 15-1001

ALBERTO IGNACIO ARDILA OLIVARES,
PETITIONER

v.

TRANSPORTATION SECURITY ADMINISTRATION AND PETER
NEFFENGER, IN HIS OFFICIAL CAPACITY AS ADMINISTRATOR OF
THE TRANSPORTATION SECURITY ADMINISTRATION,
RESPONDENTS

———

On Petition for Review of the Decision
of the Transportation Security Administration

———

*Jason Goldstein* argued the cause and filed the briefs for petitioner.

*Dana L. Kaersvang*, Attorney, U.S. Department of Justice, argued the cause for respondents. With her on the brief were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Vincent Cohen*, U.S. Attorney, and *Sharon Swingle*, Attorney.

Before: BROWN, *Circuit Judge*, and EDWARDS and WILLIAMS, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: Alberto Ardila Olivares, the Petitioner before the court, is a foreign alien from Venezuela. In 2014, he applied to attend a Federal Aviation Administration ("FAA")-certified flight school in France to obtain a pilot certification to fly large, U.S.-registered aircraft. After conducting a background check, the Transportation Security Administration ("TSA") determined that Petitioner was a risk to aviation and national security and denied his application for training. Petitioner now seeks review of TSA's action, invoking the court's jurisdiction under 49 U.S.C. § 46110(a), and asserting causes of action under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555(e), 702, 704, 706(2).

If TSA, on behalf of the Secretary of Homeland Security, determines that an alien presents a "risk to aviation or national security," then flight instructors, pilot schools, and aviation training centers are prohibited from giving training to that alien on specified large, U.S.-registered aircraft. 49 U.S.C. 44939(a); *see also* 49 C.F.R. § 1552.3(a)(4), (e). As a consequence, an alien like Petitioner who has been denied clearance by TSA is ineligible to be certified by FAA to fly these U.S.-registered aircraft.

Petitioner claims that TSA failed to satisfy the requirements of 5 U.S.C. § 555(e) when it initially rejected his application for training because the agency gave no "grounds for denial." Petitioner also claims that TSA's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), because TSA failed to consider all relevant factors regarding his application for flight training.

The record supports Petitioner's claim under § 555(e). In these circumstances, we would normally remand the case to the agency to explain the grounds for its denial of Petitioner's training application. However, shortly after Petitioner filed his petition for review, TSA submitted to the court internal agency materials that include the findings of TSA's background investigation of Petitioner as well as internal agency communications regarding Petitioner's application. TSA also submitted the sworn declaration of Andrea Vara, the Government official who acted on behalf of TSA to deny Petitioner's application, explaining the grounds supporting TSA's determination that Petitioner was a risk to aviation and national security. The Vara Declaration confirms that the internal agency materials express TSA's reasoned, contemporaneous explanation for its decision.

Petitioner does not question the authenticity of the Vara Declaration or the authority of the declarant; and we do not have any reason to doubt the veracity of the submission. TSA thus contends that a remand of this case would be pointless. We agree. *See, e.g.*, *Tourus Records, Inc. v. DEA*, 259 F.3d 731, 737-40 (D.C. Cir. 2001) (holding that even though a letter from the Drug Enforcement Agency to the claimant was insufficient to satisfy DEA's obligation under 5 U.S.C. § 555(e) to set forth reasons for its decision against the claimant, the court would not remand the case for additional proceedings because internal DEA memoranda upon which the letter was based clarified and justified the agency's decision). The internal agency materials, as illuminated by the Vara Declaration, offer a clear and reasonable statement of the grounds upon which TSA relied in denying Petitioner's application for flight training. And, as we explain below, the Declaration and the internal agency materials to which it refers are not impermissible *post hoc* rationalizations.

Therefore, because Petitioner and the court have a written statement explaining the grounds and rationale for TSA's action, and because we find that the agency action against Petitioner was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, we conclude that there is no need to remand the case for further consideration. We therefore deny the petition for review.

## I. BACKGROUND

In the aftermath of the tragic terrorist attacks on September 11, 2001, Congress created the Transportation Security Administration to shore up our nation's civil aviation security. *See* 49 U.S.C. § 114. TSA was initially housed in the Department of Transportation and headed by the Under Secretary of Transportation for Security. *Id.* § 114(a)-(b). In 2002, TSA was moved to the newly created Department of Homeland Security under the direction of the Secretary of Homeland Security. *See* 6 U.S.C. § 203(2).

This case involves TSA's role in determining whether alien pilots may be certified to operate large, U.S.-registered aircraft. "Large aircraft means aircraft of more than 12,500 pounds, maximum certificated takeoff weight." 14 C.F.R. § 1.1 (emphasis omitted). No pilot may "serve in any capacity as an airman with respect to a civil aircraft . . . in air commerce . . . without an airman certificate" from FAA. 49 U.S.C. § 44711(a)(2); *see also* 14 C.F.R. § 61.3(a). For large aircraft, pilots must obtain additional certification known as a Type Rating. 14 C.F.R. § 61.31(a)(1). Aliens who seek training and certification to operate large, U.S.-registered aircraft must first secure clearance by TSA. *See* 49 U.S.C. § 44939(a). If TSA "determine[s] that [an alien applicant] presents a risk to aviation or national security," then that applicant is ineligible to receive the training necessary to

secure a large aircraft Type Rating from FAA. *See id.*; *see also* 49 C.F.R. § 1552.3(a)(4), (e).

Petitioner is an alien pilot who formerly lived and worked in the United States. On February 14, 2007, he was convicted in federal court of conspiracy to possess with intent to distribute controlled substances in violation of 21 U.S.C. § 846. He was sentenced to serve 80 months in prison, followed by 60 months of supervised release. On December 17, 2007, FAA sent Petitioner a letter revoking his pilot certification, effective January 7, 2008. Petitioner was subsequently deported on March 3, 2010.

After being deported, Petitioner worked as a pilot in Venezuela. In 2011, he was presented with an opportunity to fly a large, U.S.-registered aircraft, which required him to receive training for the appropriate Type Rating and then seek the appropriate certification from FAA. To achieve these ends, Petitioner applied for admission to an FAA-certified flight school in France. TSA then conducted a background investigation of Petitioner. Although TSA uncovered Petitioner's 2007 drug conviction, TSA granted him permission to attend flight school. Petitioner successfully completed flight school and obtained his Type Rating as well as various other FAA certifications.

In 2012, the U.S. Government Accountability Office ("GAO") published a report criticizing TSA's background investigations of alien pilots. GAO, WEAKNESSES EXIST IN TSA'S PROCESS FOR ENSURING FOREIGN FLIGHT STUDENTS DO NOT POSE A SECURITY THREAT (July 2012) ("GAO Report" or "Report"). The Report highlighted that TSA's investigation methods did not always thoroughly examine an alien's immigration status, and expressed concern that, as a result, the investigation might not identify all alien flight-

school applicants presenting a security threat. *See id.* at 28-33. In response to the Report, TSA revised its background check procedures. Under the new procedures, TSA thoroughly examines the immigration statuses of flight-school applicants. If an applicant is not eligible for admission into the United States and is seeking permission to attend an FAA-certified flight training program outside of the United States, TSA pursues a more searching investigation to determine whether the applicant presents a risk to aviation or national security.

In 2014, Petitioner received another opportunity to pilot a large, U.S.-registered aircraft. Although his general FAA credentials remained valid, Petitioner's Type Rating had expired. As before, Petitioner applied to attend an FAA-certified flight school in France, and TSA conducted a background investigation.

Pursuant to TSA's new procedures, the agency's investigation flagged that Petitioner was inadmissible to enter the United States due to his 2007 drug conviction. As a result, Petitioner's application was referred for further investigation. The investigation uncovered that, in addition to his 2007 drug conviction, Petitioner had been suspected of firearms trafficking in 1998 in Aruba. TSA also discovered that, even though he had been deported with no right to return to the United States, Petitioner maintained a local address in Massachusetts.

TSA apparently believed that Petitioner was seeking to attend a flight school in the United States. As a result, the agency initially declined to process Petitioner's application. On October 27, 2014, TSA sent Petitioner the following email message:

This training request cannot be processed for the following reason(s): [TSA] has received information in regards to your immigration status. As a result, your current training request to attend flight training at a United States flight school has been cancelled. If you resolve your immigration status and provide the appropriate supporting documentation this cancellation may be lifted and your training request approval reinstated.

Petitioner immediately responded to TSA, explaining that he sought to attend flight school in France and not in the United States.

With Petitioner's clarification in hand, TSA performed a follow-up review of his file. After this further review, TSA concluded that Petitioner was a "Threat to Transportation/National Security." On November 5, 2014, TSA sent an email to Petitioner denying his application. The email stated:

Pursuant to Title 49 of the Code of Federal Regulations [§] 1552.3(e), your training request has been denied as TSA is unable to determine that you do not pose a threat to aviation or national security. This letter constitutes TSA's final determination.

TSA's email gave no further explanation for its denial of Petitioner's application.

On January 5, 2015, Petitioner filed his petition for review with this court. On March 26, 2015, Andrea Vara executed a sworn declaration explaining TSA's grounds for denying Petitioner's application for training. Ms. Vara is employed by the U.S. Department of Homeland Security,

Transportation Security Administration, as the Alien Flight Student Program Manager. She has been "responsible for managing TSA's Alien Flight Student Program, which conducts security threat assessments on individuals who are not U.S. citizens or nationals who seek flight instruction or recurrent training from Federal Aviation Administration (FAA)-certified flight training providers . . . . [Her] duties include making final decisions regarding whether such individuals pose a threat to aviation or national security." Vara Declaration at 1, ¶ 3.

The Vara Declaration makes it clear that Ms. Vara was the Government official who made the determination that Petitioner's application should be denied because he presented a risk to aviation and national security. The Declaration not only explains the agency's rationale, it also cites internal materials that TSA had before it at the time when the determination was made to deny Petitioner's application. These materials are included in the parties' Joint Appendix. The Vara Declaration states, *inter alia*:

12. In October 2014, Petitioner submitted Training Request #565192, seeking to train at FlightSafety International – Paris Learning Center from November 10 - November 17, 2014.

13. Pursuant to the revised procedure, Petitioner was subject to an investigation, which revealed the following. In 2007, Petitioner pled guilty to conspiracy to possess with intent to distribute controlled substances and the U.S. District Court for the Northern District of Illinois sentenced him to eighty (80) months imprisonment. Petitioner's conviction made him inadmissible to the United States and led to the revocation of his FAA

Airman's Certificate. Petitioner was deported to his home country of Venezuela in March 2010.

14.     A public news article published after Petitioner was deported provided a U.S. address for Petitioner. Further, records indicated that Petitioner was a suspected international trafficker in firearms. There was evidence that Petitioner had previously been involved in the export of weapons and U.S. currency to Venezuela by private aircraft, was the second pilot of an aircraft from which several weapons and $500,000 was seized by local authorities in Aruba, and that one of his associates was arrested in Aruba for smuggling firearms. [Footnote 6]

> [Footnote 6] Some of this information was from the late 1990s. I considered its age when determining whether Petitioner posed a risk. Because the evidence indicated Petitioner had smuggled weapons and money and was convicted for drug trafficking, I concluded these were not isolated incidents, and rather revealed Petitioner's consistent disregard for the law.

15.     This information, viewed as a whole, demonstrated Petitioner's willingness to consistently disregard the law and to use an aircraft for criminal activity, in opposition to U.S. security interests. The information also raised concerns that Petitioner may use his flight training to advance the interests of a criminal enterprise, which could include an enterprise that seeks to do harm to the United States.

16.     Based on all the foregoing information, I concluded Petitioner posed a threat to aviation and national security and [TSA's Alien Flight Student Program] denied his training request on November 5, 2014.

Vara Declaration at 3-4 & n.6, ¶¶ 12-16.

The entire Vara Declaration was included in the parties' Joint Appendix that was submitted to the court. Both parties discuss the Vara Declaration in their briefs to the court. And, as noted above, Petitioner does not question the authenticity of the Vara Declaration or the authority of the declarant; and we do not have any reason to doubt the veracity of TSA's account of the grounds justifying the agency's denial of Petitioner's application for flight training.

## II. ANALYSIS

### A. THE COURT'S JURISDICTION

As noted above, Petitioner has invoked the jurisdiction of the court under 49 U.S.C. § 46110(a). An action taken by TSA on behalf of the Secretary of Homeland Security under the authority of 49 U.S.C. § 44939(a) is clearly subject to review under § 46110(a). The Government does not question the court's subject matter jurisdiction, nor do we have any doubt that Petitioner is properly before this court.

The Government contends that, "[t]o the extent that petitioner argues that the agency erred in weighing the evidence, judicial review of the agency's expert judgment regarding the level of risk to accept in permitting aliens to attend flight school is highly deferential." Br. for Respondents at 11. This is indisputable. There are portions of the Government's argument, however, that appear to conflate subject matter jurisdiction, Petitioner's APA causes of action, and the applicable standard of review. *See, e.g.*, *id.* at 11-12 & n.3. Lest there be any confusion on this point, we want to be plain in saying that, under established law, the court has jurisdiction under 49 U.S.C. § 46110(a) to review actions

taken by TSA pursuant to the authority of § 44939. The extent to which the court defers to TSA's judgment that a person should be denied flight training because he poses a risk to aviation or national security is a different matter that concerns the standard of review, not jurisdiction.

**B**. **STANDARD OF REVIEW**

Pursuant to the Administrative Procedure Act, we must uphold TSA's decisions unless they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see also Alaska Airlines, Inc. v. TSA*, 588 F.3d 1116, 1120 (D.C. Cir. 2009). During oral argument, Government counsel acknowledged that this case does not involve any materials of a sensitive nature that should not be disclosed due to security concerns. Even in cases in which sensitive materials may be in issue, however, "the court has inherent authority to review classified material *ex parte*, *in camera* as part of its judicial review function." *Jifry v. FAA*, 370 F.3d 1174, 1181-82 (D.C. Cir. 2004) (reviewing *in camera* TSA's internal materials under the APA in upholding TSA's determination that two pilots posed a security threat).

What is important here is that, "because Congress has entrusted TSA with broad authority over 'civil aviation security,' it is 'TSA's job—not . . . ours—to strike a balance between convenience and security.'" *Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343, 1350 (D.C. Cir. 2014) (citations omitted) (citing *Suburban Air Freight, Inc. v. TSA*, 716 F.3d 679, 683 (D.C. Cir. 2013)). Therefore, in cases of this sort, we must defer to TSA actions that reasonably interpret and enforce the safety and security obligations of the agency. *See Suburban Air Freight*, 716 F.3d at 683. As we explain below, courts do not second-guess expert agency judgments on

potential risks to national security. Rather, we defer to the informed judgment of agency officials whose obligation it is to assess risks to national security. See the discussion in part II.D, *infra*.

## C. PETITIONER'S CLAIM UNDER SECTION 555(e) OF THE APA

Section 555(e) of the APA provides:

> Prompt notice shall be given of the denial in whole or in part of a written application, petition, or other request of an interested person made in connection with any agency proceeding. Except in affirming a prior denial or when the denial is self-explanatory, the notice shall be accompanied by a brief statement of the grounds for denial.

5 U.S.C. § 555(e). Petitioner claims that TSA's November 5, 2014 email to him denying his application for flight training violated the requirements of § 555(e) because the email offered no statement of the grounds for the agency's denial. As noted above, Petitioner's claim, at least at first blush, is compelling.

In *Tourus Records, Inc. v. DEA*, we explained:

> A "fundamental" requirement of administrative law is that an agency "set forth its reasons" for decision; an agency's failure to do so constitutes arbitrary and capricious agency action. That fundamental requirement is codified in section 6(d) of the APA, 5 U.S.C. § 555(e). Section 6(d) mandates that whenever an agency denies "a written application, petition, or other request of an interested person made in connection with any agency

proceeding," the agency must provide "a brief statement of the grounds for denial," unless the denial is "self-explanatory." This requirement not only ensures the agency's careful consideration of such requests, but also gives parties the opportunity to apprise the agency of any errors it may have made and, if the agency persists in its decision, facilitates judicial review. Although nothing more than a "brief statement" is necessary, the core requirement is that the agency explain "why it chose to do what it did." Henry J. Friendly, Chenery *Revisited: Reflections on Reversal and Remand of Administrative Orders*, 1969 DUKE L.J. 199, 222.

259 F.3d at 737 (citations omitted). TSA's email to Petitioner denying his application for flight training did not meet this APA standard. The email simply parroted the words of 49 U.S.C. § 44939(a), without offering anything to explain why TSA had determined that Petitioner presented a risk to aviation or national security. And TSA has not argued that the reasons behind the denial of Petitioner's application were "self-explanatory." 5 U.S.C. § 555(e). "The [email] thus provides no basis upon which we could conclude that it was the product of reasoned decisionmaking." *Tourus Records*, 259 F.3d at 737.

"When an agency provides a statement of reasons insufficient to permit a court to discern its rationale, or states no reasons at all, the usual remedy is a 'remand to the agency for additional investigation or explanation.'" *Id.* (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)). This case presents an unusual situation, however, because, after Petitioner filed his petition for review, TSA submitted the Vara Declaration and other internal agency documents that, together, offer a clear statement of the grounds and rationale upon which TSA relied in denying Petitioner's application for

flight training. The internal materials include the findings of TSA's background investigation of Petitioner as well as internal agency communications. And, as explained by the Vara Declaration, these internal materials express TSA's reasoned, contemporaneous explanation for its decision. The internal materials are not impermissible "*post hoc* rationalizations" for agency action. *Tourus Records*, 259 F.3d at 738 (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)). Rather, they "represent the 'contemporaneous explanation of the agency decision,'" and, therefore, they are "appropriate subjects for our consideration." *Id.*

The Vara Declaration is a *post-hoc* account. It is persuasive, however, because it shows that the previously undisclosed internal materials in fact do state the contemporaneous explanation for TSA's denial of Petitioner's application. The Vara Declaration "illuminate[s]" the reasons that are implicit in the internal materials. *Clifford v. Peña*, 77 F.3d 1414, 1418 (D.C. Cir. 1996). In other words, the Vara Declaration furnishes an explanation of the administrative action that is necessary to facilitate effective judicial review. *Camp v. Pitts*, 411 U.S. 138, 142-43 (1973). The critical point is that the Vara Declaration contains "no new rationalizations"; it is "merely explanatory of the original record," and thus admissible for our consideration. *Envtl. Def. Fund., Inc. v. Costle*, 657 F.2d 275, 285 (1981) (citations omitted); *see also Manhattan Tankers, Inc. v. Dole*, 787 F.2d 667, 672 n.6 (D.C. Cir. 1986) (upholding "the [agency's] decision on the basis of [the decision maker's] affidavit[]," where the affidavit was "consistent with the administrative record").

Importantly, the Vara Declaration explains that, as a result of the July 2012 GAO Report, TSA changed the way

that it conducts its background investigations. TSA now thoroughly examines the immigration statuses of flight-school applicants, and, if an applicant is not eligible for admission to the United States and is seeking training outside the country, the applicant's file is flagged for further review. The Vara Declaration then summarizes what is stated in TSA's internal materials: that in this case, the investigation had flagged that Petitioner was inadmissible due to his 2007 drug conviction and had then further discovered that Petitioner maintained a U.S. address and had been suspected of firearms trafficking. The Declaration also makes it clear that Ms. Vara, on behalf of TSA, considered all of the information in Petitioner's record, and, on the basis of that record, reached the following conclusion:

> Some of this information [that I considered] was from the late 1990s. I considered its age when determining whether Petitioner posed a risk. Because the evidence indicated Petitioner had smuggled weapons and money and was convicted for drug trafficking, I concluded these were not isolated incidents, and rather revealed Petitioner's consistent disregard for the law.

> This information, viewed as a whole, demonstrated Petitioner's willingness to consistently disregard the law and to use an aircraft for criminal activity, in opposition to U.S. security interests. The information also raised concerns that Petitioner may use his flight training to advance the interests of a criminal enterprise, which could include an enterprise that seeks to do harm to the United States.

> Based on all the foregoing information, I concluded Petitioner posed a threat to aviation and national security

and [TSA's Alien Flight Student Program] denied his training request on November 5, 2014.

Vara Declaration at 4 & n.6, ¶¶ 14-16.

The Vara Declaration confirms that TSA's decision was based on some concrete information relating to Petitioner's personal history, which raised reasonable suspicions and caused TSA to reach an informed judgment that Petitioner presented a risk to aviation and national security.

Although we find that the internal agency materials, as illuminated by the Vara Declaration, satisfy the requirements of § 555(e), we add a word of caution. In the future, agencies will be well advised to obey the explicit command of § 555(e), rather than counting on being able to salvage their actions later, after the losing party has been forced to seek redress in court.  Persistent scofflaw behavior might cause the courts to insist that the contemporaneous explanation actually be expressed to the complaining party, as the statute requires, on pain of vacatur and remand. Or the courts might insist on progressively more compelling indications that the reasons offered were in fact the reasons governing the decision when it was made. The offending agency action in this case was mitigated somewhat because the internal materials and the Vara Declaration were included in the parties' Joint Appendix, and Petitioner had an opportunity to review these materials before briefing and oral argument. This may not be sufficient in future cases involving agency defiance of § 555(e).

### D.  PETITIONER'S OTHER APA CLAIMS

In addition to his claim under § 555(e), Petitioner also contends that TSA's action was "arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), because TSA failed to consider all relevant factors regarding his application for flight training. We disagree.

Petitioner argues that TSA's rejection of his application is inconsistent with TSA's October 27, 2014 email message, which merely stated that Petitioner's status as an inadmissible alien precluded him from attending flight school *in the United States*. We do not perceive any inconsistency. The October 27, 2014 message declined to process Petitioner's application due to his inadmissibility. Once Petitioner informed TSA that he sought to attend a flight school in France and not in the United States, TSA performed a follow-up review of his application and concluded that Petitioner presented a risk to aviation and national security.

Petitioner also contends that TSA acted arbitrarily because the agency granted his application in 2011 but denied it in 2014. In his Reply Brief, however, Petitioner concedes that TSA was unaware in 2011 of Petitioner's Massachusetts address and his suspected involvement in firearms trafficking. More importantly, the 2011 investigation took place before TSA changed its investigation procedures to address the concerns raised in the July 2012 GAO Report.

Petitioner further claims that it is illogical for TSA to consider him a threat to aviation or national security, given that Petitioner still holds his other FAA credentials and is currently authorized to fly various aircraft. The validity of Petitioner's other credentials, however, are not before the court. Moreover, FAA is directed by statute to respond to TSA threat assessments by "amending, modifying, suspending, or revoking any part of a certificate issued under this title." 49 U.S.C. § 46111(a). The statute also makes it

clear that if, after approving an alien's application for training, TSA "determines that the individual presents a risk to aviation or national security," the prior approval can be revoked. *Id.* § 44939(b).

Finally, Petitioner argues that TSA should not have used his suspected firearms trafficking or his Massachusetts address to support its decision. Petitioner claims that the Massachusetts address actually belongs to his brother, and Petitioner insists that he has never illegally entered the United States. Petitioner also points out that the firearms incident occurred nearly two decades ago and that he was merely suspected of being involved. In light of the limited standard of review that controls the disposition of this case, these arguments are not persuasive. It was rational for TSA to find it suspicious and thus consider information indicating that a deported individual appeared to maintain a current U.S. address and had been suspected of involvement in firearms trafficking. The agency's weighing of this information, along with the information regarding Petitioner's known criminal history, was not inconsistent with reasoned decision making. As the Vara Declaration makes clear, Petitioner's *record as a whole* "raised concerns that Petitioner [might] use his flight training to advance the interests of a criminal enterprise, which could include an enterprise that seeks to do harm to the United States." Vara Declaration at 4, ¶ 15.

Given TSA's broad authority to assess potential risks to aviation and national security, the agency's clear and reasonable explanation offered in the Vara Declaration, and the limited standard of review, we are in no position to second-guess TSA's judgment in denying Petitioner's application. *See Jifry*, 370 F.3d at 1180. In assessing risks to national security, "conclusions must often be based on informed judgment rather than concrete evidence, and that

reality affects what we may reasonably insist on from the Government." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 34-35 (2010). "[W]hen it comes to collecting evidence and drawing factual inferences in this area, 'the lack of competence on the part of the courts is marked,' and respect for the Government's conclusions is appropriate." *Id.* at 34 (citation omitted). "[W]here no factual certainties exist or where facts alone do not provide the answer . . . we require only that the agency so state and go on to identify the considerations it found persuasive." *Jifry*, 370 F.3d at 1180 (citation omitted).

It is self-evident that TSA's action against Petitioner was related to the agency's "goals of improving the safety of air travel." *Id.* TSA was not required to show that Petitioner *would* engage in activities designed to compromise aviation or national security. Rather, the agency was merely required to give a reasonable explanation as to why it believed that Petitioner *presented a risk* to aviation or national security. The Vara Declaration satisfies this legal obligation.

## III. CONCLUSION

For the reasons set forth above, the petition for review is denied.

*So ordered*.