# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

**No. 20-1480**  ...  **September Term, 2022**

FILED ON: February 21, 2023
REISSUED FOR PUBLICATION: March 20, 2023*

JULIENNE EDEN BUSIC,
        PETITIONER

v.

TRANSPORTATION SECURITY ADMINISTRATION,
        RESPONDENT

———

On Petition for Review of a Final Order
of the Transportation Security Administration

———

Before: KATSAS, RAO, and CHILDS, *Circuit Judges*.

## <u>J U D G M E N T</u>

This petition for review of an order of the Transportation Security Administration ("TSA") was presented to the court and briefed and argued by counsel. The court has afforded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. CIR. R. 36(d). For the following reasons,

it is **ORDERED** and **ADJUDGED** that the petition for review be denied.

I.

In 1976, Julienne Busic and several others hijacked a plane, rerouting a Boeing 727 from Chicago to Paris. *See United States v. Busic*, 592 F.2d 13, 16–18 (2d Cir. 1978). Along the way, Busic's gang repeatedly "threatened to kill" the passengers, all while one of the hijackers wore what looked like a detonator and several bombs. *Id*. at 17–19. Those bombs were fake, but one of the hijackers had placed real explosives in Grand Central Station. *Id*. at 16–17. After finding the

---

\* This judgment was originally entered by the Court on February 21, 2023, as an unpublished decision. The judgment is published following the panel's grant of the motion of the Transportation Security Administration to publish the judgment. Publication of the judgment does not affect the time for filing any petition for rehearing or for issuance of the mandate.

real bomb, police attempted to inspect it, but it exploded, killing one officer and injuring three others. *Id*. at 18–19. Busic was convicted and received a life sentence for "aircraft piracy resulting in the death of another person" and another sentence for "conspiracy to commit aircraft piracy." *Id*. at 16. Thirteen years into her sentence, Busic was released on parole.

Busic flew freely on commercial airlines for the following two decades. But that freedom ended in January 2009 when a gate agent refused to let Busic board a flight to the United States. The agent claimed that U.S. authorities had flagged her passport and prohibited the airline from seating her. Frustrated, Busic filed two "redress inquiries" with the TSA—the first in 2010 and the second in 2015. The TSA eventually responded, telling Busic that she was on the No Fly List because she "may be a threat to civil aviation or national security." J.A. 264 (relying on 49 U.S.C. § 114(h)(3), which permits the TSA to "prevent [anyone] from boarding an aircraft" who "may be a threat to civil aviation or national security"). After Busic unsuccessfully appealed the agency's decision, she petitioned for review, claiming the TSA's actions were arbitrary and capricious and that its redress procedures violated due process (among other things). We disagree, and thus deny the petition for review.

## II.

Although the parties agree Busic has standing, "the absence of [it] is a defect in this court's subject matter jurisdiction," so we must consider it "at the outset." *Farrell v. Blinken*, 4 F.4th 124, 129 (D.C. Cir. 2021). This court can review "order[s] issued" by the TSA Administrator and "set aside any part of" them. 49 U.S.C. § 46110(a), (c). Previously, when the TSA lacked authority to issue these types of orders, we held that petitions challenging No Fly List determinations presented no redressable injury because we did not have the authority under 49 U.S.C. § 46110 to set those orders aside. *See Ege v. U.S. Dep't of Homeland Sec.*, 784 F.3d 791, 793 (D.C. Cir. 2015). Under the TSA's current procedures, however, the TSA Administrator is tasked with "issu[ing] a final order maintaining" or "removing" a traveler from the No Fly List. J.A. 300; *see also Kashem v. Barr*, 941 F.3d 358, 391 (9th Cir. 2019) (observing this). Because the TSA Administrator now has the authority to issue No Fly List determinations, we have jurisdiction to review Busic's petition.

## III.

Busic contends the TSA's redress procedures violate due process, and she says the agency's No Fly List determination was arbitrary and capricious. She also maintains the TSA must provide her with a full, unredacted copy of the administrative record. All three arguments fail.

### A.

Busic first claims that her placement on the No Fly List is a violation of the Fifth Amendment's Due Process Clause. When determining whether administrative procedures satisfy due process, we generally weigh three elements: (1) "the Government's interest"; (2) "the private interest"; and (3) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Jifry v. F.A.A.*, 370 F.3d 1174, 1183 (D.C. Cir. 2004) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). The results of this balancing cut decisively in the TSA's favor.

To begin with, protecting national security is a government interest of the highest order.

2

"It is obvious and unarguable that no governmental interest is more compelling than the security of the Nation." *Haig v. Agee*, 453 U.S. 280, 307 (1981) (quotation marks omitted). Specifically, we have observed the government has an "interest[] in preventing pilots" and passengers "from using civil aircraft as instruments of terror." *Jifry*, 370 F.3d at 1183. Busic's interest is less clear. Although she enjoys "the right to travel," *see Haig*, 453 U.S. at 306 (emphasis omitted), she "does not possess a fundamental right to travel *by airplane*," *Gilmore v. Gonzales*, 435 F.3d 1125, 1137 (9th Cir. 2006) (emphasis added). And any interest that Busic has in air travel is invariably "subordinate to national security and foreign policy considerations." *Haig*, 453 U.S. at 306. The TSA's compelling interest in protecting national security outweighs Busic's individual travel preferences.

Turning to the third *Mathews* factor, Busic says the TSA's interests in aviation security "can be accomplished [by] using less restrictive means" or more robust procedural protections. Pet. Br. 33–34. Given "the governmental interests at stake," however, we think any "substitute procedural safeguards" would be "impracticable." *Jifry*, 370 F.3d at 1183. As the TSA Administrator noted in the final order, alternatives to the No Fly List "cannot be 100 percent effective against all potential threat[s]." J.A. 316. The TSA concluded that less restrictive means may be insufficient to protect passengers and crews from another hijacking attempt. That is not a threat the TSA must accept, nor is it one the Due Process Clause requires. *See Olivares v. Transp. Sec. Admin.*, 819 F.3d 454, 462 (D.C. Cir. 2016) ("[I]t is TSA's job—not ours—to strike a balance between convenience and security.") (cleaned up). Therefore, Busic's placement on the No Fly List does not offend due process. *See Kashem*, 941 F.3d at 365.

B.

Busic next claims it was "arbitrary and capricious" for the TSA "to conclude that [she] currently presents a threat to air transportation … simply because [she] engaged in one act nearly 50 years ago." Pet. Br. 11–12.

Courts have limited competence in the area of national security, and therefore our role in reviewing factual determinations in this context is "highly deferential." *Olivares*, 819 F.3d at 462 (quotation marks omitted). In a similar context involving the revocation of so-called "airman certificates," we have previously explained that "where no factual certainties exist or where facts alone do not provide the answer," an agency need only "so state and go on to identify the considerations it found persuasive." *Jifry*, 370 F.3d at 1180 (quotation marks omitted).

The TSA's conclusion here was reasonable. In determining that Busic should remain on the No Fly List, the Administrator noted Busic "[is] a convicted hijacker who participated in the planning and hijacking of Trans World Airlines (TWA) Flight 355"—a hijacking that spanned thirty hours, two continents, and ultimately resulted "in the death of one law enforcement official and the injury of three others." J.A. 304. Furthermore, Busic "openly admit[s] to [her] role in the hijacking, including assisting with the planning of the incident" and placement of the bomb. *Id*. Based on these findings (and several others), the TSA reiterated its previous conclusion, determining Busic posed "a threat of air piracy" and was therefore a risk "to civil aviation or national security." *Id*. That explanation satisfies our review with room to spare. *See Jifry*, 370 F.3d at 1180; *see also Olivares*, 819 F.3d at 466.

3

C.

Finally, Busic argues the TSA must produce the full administrative record, even though she recognizes it contains sensitive security information. Her claim is foreclosed by TSA regulations.

Congress vests the TSA Administrator with the authority to "prescribe regulations prohibiting the disclosure" of certain sensitive information whenever the Administrator decides that "disclosing [it] would … be detrimental to the security of transportation." 49 U.S.C. § 114(r)(1). Pursuant to this authority, TSA promulgated a rule that generally prohibits the disclosure of "information used by a passenger … screening program." 49 C.F.R. § 1520.5(b)(9)(ii). The No Fly List is such a passenger screening program. Furthermore, only "covered persons" may "access" the type of information used in such a program, unless the TSA, Coast Guard, or Secretary of Transportation grants an exemption. *See id.* § 1520.9(a)(2). Taken together, this regulatory framework compels a straightforward conclusion: because the information Busic requests is part of a screening program, and because Busic is not a covered person, she "has no statutory or regulatory right to access" the information she now seeks. *Corbett v. Transp. Sec. Admin.*, 767 F.3d 1171, 1183 (11th Cir. 2014) (rejecting a petitioner's request for sensitive security information because the TSA "determined" disclosure would be "detrimental to the security of transportation") (quotation marks omitted).

*　　*　　*

For the foregoing reasons, we deny the petition for review. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or petition for rehearing *en banc*. *See* FED. R. APP. P. 41(b); D.C. CIR. R. 41(a)(1).

**Per Curiam**

**FOR THE COURT:**
Mark J. Langer, Clerk

BY: /s/
Daniel J. Reidy
Deputy Clerk

4